UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JAMES WILLIAMS,

               Petitioner,                             NOT FOR PUBLICATION
-against-                                           **MEMORANDUM & ORDER**
                                                       06-CV-6359 (CBA)
UNITED STATES OF AMERICA,

               Respondent.
-------------------------------------------------------------------x
AMON, United States District Judge:

      James Williams, pro se, has petitioned the Court for a writ of habeas corpus. 28 U.S.C. § 2255. In November 2004, pursuant to a written agreement with the government, Williams pleaded guilty to conspiracy to import into the United States at least five kilograms of cocaine base, 21 U.S.C. §§ 960, 963, and, in February 2005, the Court sentenced Williams principally to ten years in prison, which was the statutory mandatory minimum sentence for the crime to which he pleaded. In his section 2255 petition, Williams alleges that his plea was not voluntary because it was made with the misunderstandings that he faced a maximum penalty of life in prison and that he would be eligible for "safety valve" relief from the mandatory minimum sentence, 18 U.S.C. § 3553(f). He also alleges that the government promised that if he pleaded guilty it would not prosecute his then-fiancée for her involvement in the cocaine conspiracy but failed to honor that promise. For the reasons that follow, these arguments and others are rejected, and the petition for a writ of habeas corpus is denied.

## BACKGROUND

### A. Indictment and Plea

      According to a criminal complaint dated August 2004, Williams and his then-fiancée, Ruth Anderson Fialkow, were involved in a drug trafficking organization that was smuggling

1

large quantities of cocaine into the United States (through John F. Kennedy International Airport) from St. Vincent, the Caribbean island. (¶ 4.) In the complaint, Williams was alleged to have accompanied a woman to and from St. Vincent to retrieve cocaine in December 2004 and in March 2004 to have purchased airline tickets for another individual to travel to St. Vincent to retrieve cocaine. (¶¶ 8, 9.)

A federal grand jury returned an indictment against Williams and Fialkow in October 2004. That indictment charged four counts, including conspiracy to import into the United States five kilograms or more of cocaine (Count One); importation into the United States of five kilograms or more of cocaine (Count Two); conspiracy to possess with intent to distribute five or more kilograms of cocaine (Count Three); and possession with intent to distribute five or more kilograms of cocaine (Count Four).

The final paragraph of the indictment charged that each defendant was an "organizer, leader, manager, and supervisor in the criminal activity" described in the indictment. See U.S.S.G. § 3B1.1(c).

On November 16, 2004, pursuant to an agreement with the government, Williams pleaded guilty to Count One. The plea agreement explained that Count One carried a statutory minimum penalty of ten years and a statutory maximum penalty of life in prison. (¶ 1 (citing 21 U.S.C. § 960(b)(1)).) The agreement estimated Williams's guidelines range (assuming he pleaded guilty before a certain date) to be 108 to 135 months, which reflected a two-level enhancement for Williams's managerial role, U.S.S.G. § 3B1.1(c), and a three-level reduction because Williams accepted responsibility, U.S.S.G. § 3E1.1(a), (b). (¶ 3.) The agreement further observed that that range was effectively 120 to 135 months because of the mandatory minimum sentence provided by statute. (Id.)

2

The agreement also provided that Williams would not file an appeal or otherwise challenge his conviction or sentence so long as he received a term of imprisonment of 151 months or less. (¶ 5.)

For its part, the government agreed to drop the remaining charges against Williams, to not further prosecute him for his role in the cocaine conspiracy described in the indictment, to take no position at sentencing with respect to where within the guidelines range Williams ought to be sentenced, and not to move for an upward departure at sentencing. (¶ 6.)

The agreement also contained a merger clause, which provided that "no promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement." (¶ 8.) Moreover, the "agreement supersedes all prior promises, agreements or conditions between the parties." (Id.)

In court, before he pleaded, Williams affirmed under oath that he had consulted with his attorney, Richard Lind, and that he understood what rights he was waiving by pleading guilty. (Tr. at 4.) The Court explained Count One and what the government would have to prove at trial to secure a conviction, and Williams affirmed that he knew this and wanted to plead guilty. (Id. at 5–8.)

With respect to the plea agreement, the Court asked the government whether the written agreement represented the "entirety of any understanding" that it had reached with Williams. The government said yes. (Id. at 8.) The Court asked Lind whether that was his understanding as well and he said yes. (Id.) The Court also asked Williams whether the government had promised him anything that was not contained in the written agreement and he said no. (Id. at 9.)

The Court then directed Williams's attention to a few specific provisions in the agreement, including the provision by which Williams waived the right to challenge the

constitutionality of the sentencing guidelines (which was an open question at the time) and the provision by which he agreed not to appeal or otherwise challenge his conviction or sentence if the Court imposed a term of imprisonment not exceeding 151 months. (Id. at 9–10.) Williams said that he understood all that. (Id. at 10.)

The Court also identified for Williams the maximum term of imprisonment he might receive by pleading guilty to Count One (life), as well as the mandatory minimum term (ten years), which "under ordinary circumstances, the Court is bound by." (Id. at 10–11.) The Court asked whether there was any "safety valve potential here," and the government responded, "I don't believe he's eligible for safety valve as he was indicted as an organizer, leader, manager." (Id. at 12.)

The Court asked whether Williams understood that his guidelines range could not yet be determined but that the estimated range was 108 to 135 months, and Williams said that he did. (Id. at 12–13.) The Court reminded Williams that in the event that his final guidelines range permitted a sentence below 120 months, the Court would be obligated to impose no less than 120 months, in view of the statutory mandatory minimum. (Id. at 13.) Williams said that he understood that. (Id.)

Williams then said that he was ready to plead. The Court asked Williams whether, "other than the plea agreement with the government that we've talked about here today, has anyone made you a promise that's caused you to plead guilty?" (Id. at 15.) Williams said no. (Id.) Williams also confirmed that nobody had promised him what sentence he would receive by pleading guilty. (Id.)

He then allocuted, stating that, between November 2003 and July 2004, he conspired with others to bring drugs into the country through New York. (Id.) He said that he "was basically in

4

charge of finding people to go down and bring the drugs back here." (Id.) He confirmed that "it was five kilograms or more of drugs that was involved in this" and that "the drug was cocaine." (Id. at 16.) The parties agreed that the colloquy was sufficient and the Court accepted the plea.

Relevant here, the presentence report that the probation department prepared after Williams pleaded guilty recommended that he receive a four-level enhancement for being a "leader" or "organizer" in the cocaine conspiracy to which he pleaded guilty. Lind objected to that recommendation by letter. He argued (citing cases) that Williams, as he admitted at sentencing, acted only as a "supervisor" or "manager" when he recruited and managed couriers, which meant he should only receive a two-level enhancement. He observed that the indictment and plea agreement both contemplated only a two-level enhancement.

The Court imposed sentence at a hearing on February 10, 2005. After resolving the dispute about the four-level enhancement to the (now advisory) guidelines range for a leadership role in the defendant's favor, the parties agreed that the range was 108 to 135 months. (Tr. at 2.) The government reminded the Court that the safety valve provision was not applicable because Williams was a manager, and Lind informed the Court that he had explained to Williams that even after United States v. Booker, 543 U.S. 220 (2005), this barred the Court from sentencing Williams below the mandatory minimum. (Id. at 3.)

After Williams said that he was satisfied with Lind's representation, Lind argued for the statutory mandatory minimum sentence. (Id. at 3–4.) In his own behalf, Williams apologized for what he had done and for involving Fialkow, his fiancée, in his "mess," explaining that "this is my mess and she kind of got caught up in the mix." (Id. at 4.)

The Court sentenced Williams principally to 120 months in prison. The Court also expressed its view that Williams had acted admirably in claiming responsibility as a supervisor

5

of the drug conspiracy at issue in the indictment, especially in view of the fact that his parents had written the Court to state their opinion that Fialkow had been the leader of the operation. (Id. at 7–8.)

The Court then informed Williams that it recollected that he had waived the right to file an appeal, but if that was not the case, he had ten days to file one. (Id. at 8–9.) Williams affirmed that he understood that. (Id.)

### B. Appeal

Williams, pro se, filed a notice of appeal in May 2005 and attached to the notice of appeal an affidavit dated April 27, 2005. In that affidavit, Williams averred that Lind had rendered ineffective assistance of counsel throughout the proceedings in the district court. (¶ 3.) He averred also that Lind had "failed to provide legal counsel as it relates to Affiant's rights of appeal, relating to the imposition of sentence." (¶ 4.) He further stated that Lind had failed to file a notice of appeal even though he had specifically directed him to do so. (¶¶ 5, 14.)

With respect to the errors he might like to assert on appeal, Williams mentioned that Lind failed adequately to advise him about how Booker and Blakely v. Washington, 542 U.S. 296 (2004), affected his plea and sentencing. (¶ 8.)

While that appeal was pending, Williams filed, in January 2006, what purported to be a petition for a writ of habeas corpus with this Court. In it, Williams alleged that he agreed to plead guilty to Count One for two reasons. First, because, according to Lind, doing so would ensure that he was eligible for safety valve relief from the ten-year mandatory minimum, and, second, because the government had promised that it would drop all charges against Fialkow. (Id. at 4–6.)

6

Williams made other allegations, too, although these allegations are not always coherent. He said that the government engaged in "sentencing manipulation" by charging him as a leader of the cocaine conspiracy; that although when he pleaded guilty he believed that he faced a maximum penalty of life in prison, he really only faced twenty years; that the indictment was defective because it did not charge drug quantity; and the government needed to prove drug quantity to a jury but did not. (Id. at 5–6, 11–12, 14–16, 19.)

He also asserted several contract law arguments about the plea agreement, including that it contained an implied covenant of good faith and fair dealing that the government had breached. (Id. at 22–32.) He also generally alleged that Lind did not render effective assistance of counsel.

On January 31, 2006, the Court dismissed this petition for want of jurisdiction, explaining that Williams could not seek collateral relief while his direct appeal was pending. In June 2006, the Second Circuit dismissed Williams's direct appeal "for failure to timely file a notice of appeal."

**C. Operative Habeas Petition**

In November 2006, Williams filed the petition for a writ of habeas corpus that is the subject of this order. Although the first couple of pages of the November 2006 petition are different from the first page of the January 2006 petition, the remainder of the petition appears to be substantively indistinguishable from the remainder of the January 2006 petition.

Williams attached to his petition an undated affidavit in which he described the appellate history of his case. The affidavit identified, without explaining what each meant, the appellate issues he had asked his appellate attorney (Roland Acevedo) to argue, all of which Williams said "were extrinsic to the record": (a) enhancement for role and drug quantity; (b) consideration for

7

safety valve relief; (c) breach of the plea agreement; (d) ineffective assistance of counsel; (e) sentencing factor manipulation; (f) prosecutorial breaches; (g) breach of good faith and fair dealing; (h) substantial compliance with the agreement. Williams also attached the notice of appeal and supporting affidavit that he had previously filed in connection with his unsuccessful appeal.

He further attached a "verified affidavit for cause of action / complaint" dated October 10, 2005. That affidavit asserted many of the same facts asserted in the petition and then alleged twenty one "causes of action," many of which are not obviously recognized causes of action. It is not clear whether Williams ever filed this document with any court after he executed it in October 2005.

In February 2007, the government opposed the habeas petition, arguing that although Williams generally attacked the plea agreement and generally alleged ineffective assistance of counsel, he at no point alleged that he did not understood the appeal and collateral-attack waiver contained in the agreement. Thus, the government urged, the petition should be dismissed as barred by the waiver. The government asked that if for some reason the Court found the waiver invalid, it permit the government to respond to the petition on the merits.

In April, Williams filed a traverse. In it, he argued that the plea agreement was invalid because it was a contract of adhesion and asserted that the parties' failure to inform the Court of all of the promises that induced the plea was "structural error." He said that when, at the plea hearing, he told the Court that there were no promises other than those contained in the agreement, he lied, which is what he was told to do by Lind. Williams also said that he had never allocuted to being an organizer or leader of the cocaine conspiracy and thus should have been eligible for safety valve relief.

The Court ordered the government to respond to Williams's arguments about the voluntary nature of his guilty plea. In response, the government described Williams's factual allegations about safety valve relief and the prosecution of Fialkow as "late-breaking, conclusory and wholly incredible." (Nov. 30, 2007 Ltr. at 5.)

The government provided a sworn affidavit from Lind, who testified that he remembered the three year old case well because Williams had been a good client and Lind had filed an interlocutory appeal when the Court refused to release Williams after he pleaded but before sentencing, which is something that Lind had never done before. Lind said that he had "no recollection that the government agreed to favorably adjust Ms. Fialkow's case" and recalled that, at the first proffer session, Williams admitted that Fialkow was involved in the conspiracy. (Nov. 30, 2007 Ltr. Ex. C ¶ 4.)

Lind further stated that he did not recall any discussion about the fact that Williams might be eligible for safety valve relief. Instead, Lind testified, he believed that Williams "knew from the outset that he was ineligible for treatment under the safety valve provision" because he was charged as a leader in the indictment. (Id. ¶ 5.) Indeed, Lind recalled, Williams allocuted to supervising aspects of the conspiracy.

Moreover, Lind testified that "although Williams is apparently unwilling to admit it, he realized that the sole means for him to come beneath the statutory minimum was by earning a 5K1.1 letter, via cooperation." (Id. ¶ 6.) He said that "such cooperation discussions went very well" until Williams was unwilling to discuss an alleged drug dealer who lived near him in upstate New York. (Id.) Lind said that, although Williams did not mention it, Lind arranged a second proffer session at which things also went well until Williams again refused to discuss the same drug dealer.

Finally, Lind rebutted the allegation that at any point during his representation of Williams he stopped functioning as a "zealous advocate." He observed that he arranged a second proffer session after Williams had pleaded guilty, sought bail pending sentencing, objected to the presentence report by letter, and also secured the statutory mandatory minimum penalty for his client.

In his reply to the government's letter, Williams said again that the government's reliance on the appeal waiver was misplaced. The filing repeated some of Williams's previously raised arguments (contract of adhesion, loss of zealous advocate) but the thrust of the filing appears to be that the government and Lind conclusively decided that the safety valve provision did not apply and deprived the Court of the opportunity to make that determination for itself, although Williams did not explain why this is so. Williams did not address the factual assertions in Lind's affidavit.

## DISCUSSION

The principal issue that Williams's petition presents is whether his guilty plea was voluntary. The Court concludes that it was and rejects the balance of Williams's arguments.

**I. Validity of Plea**

"[A] guilty plea is a grave and solemn act to be accepted only with care and discernment." Brady v. United States, 397 U.S. 742, 748 (1970). It "comprehend[s] all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." United States v. Broce, 488 U.S. 563, 569 (1989).

The Constitution, which regulates the validity of guilty pleas, contains "the minimum requirement that [the] plea be the voluntary expression of [the defendant's] own choice." Brady, 397 U.S. at 748. Because, as will become clear in this case, a plea operates to waive rights,

including constitutional rights, it must be entered "knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (internal quotation marks omitted). The plea must reflect "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970).

The Court evaluates an argument that a guilty plea was not voluntary because the defendant received ineffective assistance of counsel under the familiar test of Strickland v. Washington, 466 U.S. 668, 688 (1984). Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001). To prevail under that test, a defendant must prove that his attorney rendered constitutionally unreasonable assistance and "that 'there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" United States v. Coffin, 76 F.3d 494, 498 (2d Cir. 1996) (quoting Hill, 474 U.S. at 59).

Williams has suggested three reasons why his plea is invalid, all of which relate to alleged misunderstandings about what he was gaining by waiving his right to a trial. None of these arguments is persuasive.

**A. Statutory Maximum**

Williams first asserts that he pleaded guilty with the understanding that, if convicted at trial of the count to which he pleaded, he faced a statutory maximum possible punishment of life in prison. He says that in fact he faced a statutory maximum penalty of twenty years, and that, if he had known that fact, he would not have pleaded guilty.

Even if Williams's decision to plead guilty turned to some degree on the statutory maximum penalty, Williams did not misunderstand the law. Williams's current belief that he

11

faced a maximum penalty of twenty years is the result of his belief that the count to which he pleaded (Count One) did not charge a drug quantity over five kilograms, which the Second Circuit held (after Williams's plea) the indictment had to do to expose him to a maximum penalty of life in prison. See United States v. Gonzalez, 420 F.3d 111 (2d Cir. 2005); 21 U.S.C. § 960(b)(1)(B)(ii). He thus believes that the count charged only a detectable amount of cocaine, which means he faced only twenty years in prison if convicted. See 21 U.S.C. § 960(b)(3).

Williams is simply wrong about the facts. Count One specifically charged that Williams conspired to import into the United States five or more kilograms of cocaine, and it specifically cited the statutory provision authorizing a life sentence for conviction on that count. That was all that was necessary to permit a sentence of life in prison after conviction. See, e.g., United States v. Adams, 448 F.3d 492, 500–01 (2d Cir. 2006) (indictment for violation of 21 U.S.C. § 841 "provides the elements necessary for conviction" where it charges that defendant conspired "to distribute at least five kilograms of cocaine"). For this reason, Williams is not entitled to withdraw his guilty plea on the grounds that he misunderstood the maximum penalty he faced at trial.

### B. Safety Valve Eligibility

Williams has also challenged his plea as involuntary on the grounds that Lind wrongly told him that by pleading guilty he would be eligible for the safety valve and for the chance to secure a sentence below the statutory mandatory minimum of ten years. Again, although the papers are not clear, Williams apparently contends that he would not have pleaded guilty had he known that he was ineligible for safety valve relief.

As a petitioner challenging the validity of his conviction, Williams bears "the burden of establishing the factual predicate of his claim." Galviz Zapata v. United States, 431 F.3d 395,

399 (2d Cir. 1995); see also Williams v. United States, 481 F.2d 339, 346 (2d Cir. 1973) ("It is hornbook law . . . that [under section 2255] the burden of proof is on the party seeking relief."). This is because, as the Second Circuit has said, "a habeas corpus proceeding is an asymmetrical enterprise in which a prisoner seeks to overturn a presumptively valid judgment of conviction." Polizzi v. United States, 926 F.2d 1311, 1321 (2d Cir. 1991) (internal quotation marks omitted).

Williams has not carried his burden of proving that Lind advised him that he would be eligible for safety valve relief if he pleaded guilty. There is compelling evidence that Lind never gave this advice, including the fact that when, in open court at the plea hearing, the Court asked whether Williams was eligible for safety valve relief and the government said no, neither Williams nor Lind said anything. Williams also did not protest when, at sentencing, Lind told the Court that he had explained to Williams that Booker, which had recently been decided, did not change the applicability of the mandatory minimum.

Moreover, the Court specifically asked Williams at his guilty plea whether he understood that it would be bound to sentence him to at least 120 months even if his guidelines range permitted a lower sentence and Williams said that he did. He also confirmed that he had read and understood the plea agreement, which included an anticipated two-level enhancement for his role in the cocaine conspiracy that prevented his eligibility for such relief.

Those sworn statements, which contradict Williams's allegation now that he believed he was eligible to receive a sentence below 120 months, are entitled to significant evidentiary weight. See United States v. Gonzalez, 970 F.2d 1095, 1100–01 (2d Cir. 1992) ("Thus the district court could properly reject Gonzalez' unsupported allegations that his plea was the result of reliance on his attorney's incorrect characterization of the agreement and transmittal of an alleged promise made by the prosecutor."); see also Blackledge v. Allison, 431 U.S. 63, 74

(1977); United States v. Carreto, 583 F.3d 152, 158 (2d Cir. 2009) ("Solemn declarations in open court carry a strong presumption of verity." (internal quotation marks omitted)); United States v. Hirsch, 239 F.3d 221, 225 (2d Cir. 2001) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." (internal quotation marks omitted)).

Moreover, Lind has specifically denied advising Williams that by pleading guilty he would allow himself the possibility of a sentence below the statutory mandatory minimum by meeting the requirements of the safety valve provision. Lind has averred that Williams "knew from the outset" that he was not eligible for safety valve relief. (Nov. 30, 2007 Ltr. Ex. C ¶ 5.)

The only evidence that supports Williams's position is his own self-serving allegations and averments. Williams's view of the facts post-conviction is not persuasive, especially considering the fact that he has not challenged Lind's affidavit, even though Williams had the opportunity to do so when he filed a reply to the government's letter that included that affidavit. The Court also observes that Williams's claim—that his attorney misadvised him about his possible sentence—is just the sort of "generic claim" that can be, and often is, made in cases in which a defendant pleads guilty, which tends to undercut its believability. See Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (rejecting petitioner's claim that attorney told him not to testify at trial and did not inform him that the ultimate decision about whether to testify rested with petitioner).

In view of the entire record, an evidentiary hearing is not required to resolve this issue. Id. Williams's unsupported and self serving assertions about the advice that Lind offered do not entitle him to relief.

14

### C. Promise Regarding Fialkow

Williams also challenges his conviction on the ground that the government told him that if he pleaded guilty it would not prosecute his fiancée for her involvement in the cocaine conspiracy. He says that, notwithstanding his guilty plea, the government continued to prosecute Fialkow. Although this argument seems to the Court more properly considered an argument about the government's breach of the plea agreement (based as it is on the premise that the government made a promise that it did not honor), the government has treated it as a claim about the voluntary nature of the plea. The Court accepts that characterization because it rejects the argument's factual premise, which renders the characterization of the argument unimportant.

The Court rejects the contention that the government promised not to prosecute Fialkow for many of the same reasons it rejected the contention that Lind misadvised Williams about the consequences of his plea. First of all, at the plea hearing, under oath, Williams made statements inconsistent with this claim. He said that he had not been offered any promises not contained in the plea agreement, which would include government promises about prosecuting his fiancée. Gonzalez, 970 F.2d at 1100–01; see also Carreto, 583 F.3d at 158; Hirsch, 239 F.3d at 225.

Moreover, in an affidavit to which Williams has not responded, Lind has specifically denied having any memory of the government agreeing to "favorably adjust Fialkow's case" if Williams pleaded guilty. This absence of memory is significant given that Lind has other specific memories about this case, including about discussions involving Fialkow. The fact that Lind does not remember what would have been a significant and highly unusual promise strongly undermines Williams's claim.

Again, the only evidence supporting Williams's claim is his own self-serving statements in support of another "generic" claim—namely, that the government made promises not

15

contained in the written agreement. In view of the entire record, those statements are not persuasive and the Court finds that the government never promised Williams that it would not prosecute Fialkow if he pleaded guilty. No evidentiary hearing is needed, and Williams's claim is rejected. Chang, 250 F.3d at 86.

**II. Other Arguments**

Williams has raised other arguments throughout his habeas petition, some of which are not clear, but all of which lack merit. Many of these arguments fail because they depend on factual propositions that the Court has rejected above. Only three arguments deserve further discussion, including that the indictment to which Williams pleaded guilty was defective because it did not charge drug quantity; there was no factual basis for Williams's plea; and Williams's attorney rendered ineffective assistance at sentencing by not adequately arguing the presentence report.[1]

The first argument, about the indictment, is not persuasive. The Court assumes that, notwithstanding his guilty plea, Williams can allege that the indictment failed to charge the federal crime to which he pleaded, which deprived the Court of jurisdiction to convict him of, and sentence him for, that offense. See Hayle v. United States, 815 F.2d 879, 881 (2d Cir. 1987). But this argument still fails because, as the Court has explained, the indictment charged a conspiracy involving five kilograms or more of cocaine, which clearly states a violation of 21 U.S.C. § 960(b)(1). Adams, 448 F.3d at 500–01.

---

[1] The Court has considered the possibility that Williams is asserting a claim under Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (unreasonable attorney performance not to file an appeal when specifically directed to do so), but determines that he is not. Although Williams attached to his petition his 2005 notice of appeal and supporting affidavit, which mentions Lind's alleged failure to file a notice of appeal, the petition itself does not complain about the issue. Neither do any of Williams's later filings.

The Court assumes also that Williams can challenge, in this proceeding, the factual basis for his plea. Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998). But Williams is wrong that his plea did not establish a factual basis. The only defect that Williams attempts to identify pertains to drug quantity, but as the Court has said, Williams specifically admitted under oath that the conspiracy to which he pleaded involved at least five kilograms of cocaine. That was sufficient to establish a factual basis. Cf. United States v. Yu, 285 F.3d 192, 197–98 (2d Cir. 2002).

The argument that Lind rendered ineffective assistance at sentencing is also without merit. First, Williams's knowing and intelligent guilty plea waived these claims because Williams received a sentence within the range for which he bargained, and he promised not to challenge his conviction or sentence if that happened. See, e.g., Garcia-Santos v. United States, 273 F.3d 506, 508–09 (2d Cir. 2001).

Second, even if this claim is not barred, it is unsupported by the record. The only ineffective assistance that Williams has identified is that Lind did not contest the two-level enhancement that Williams received for his supervisory role in the cocaine conspiracy (although Lind did contest the four-level enhancement recommended in the presentence report). This was not ineffective assistance because Williams's allocution—specifically, his unambiguous admission that he recruited drug couriers—clearly established that he deserved the enhancement. See United States v. Garcia, 413 F.3d 201, 223 (2d Cir. 2005) ("Tejada testified that it was Valentin who recruited him as a drug courier for the conspiracy, conduct that, by itself, could support Valentin's § 3B1.1(c) enhancement.").

## CONCLUSION

The Court has considered all of the arguments arguably asserted in Williams's submissions and none support relief. The petition is denied. As there has been no "substantial showing of the denial of a constitutional right," no certificate of appealability shall issue. 28 U.S.C. § 2253(c).

SO ORDERED.

Dated: Brooklyn, New York
      February 25, 2011

                                          _____/s/_____
                                                 Carol Bagley Amon
                                           United States District Judge